UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PABLO GARCES CAMUS,

v.                                    Case No. 8:22-cr-332-VMC-TGW
                                               8:26-cv-785-VMC-TGW

UNITED STATES OF AMERICA.

_____/

**<u>ORDER</u>**

Pablo Garces Camus, proceeding pro se, filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence on March 20, 2026. (Civ. Doc. # 1; Crim. Doc. # 223). The United States of America responded on April 22, 2026. (Civ. Doc. # 5). Mr. Camus filed a reply. (Civ. Doc. # 6). For the reasons that follow, the Motion is denied.

**I.    <u>Background</u>**

Pursuant to a plea agreement, Mr. Camus pled guilty to one count of conspiracy to commit health care fraud. (Crim. Doc. ## 9, 47, 49, 50). The factual basis of the plea agreement stated that Mr. Camus, with co-conspirators, knowingly participated in a conspiracy "to commit the offense of health care fraud in which they obtained money from the Medicare program by submitting false and fraudulent claims for durable medical equipment [] such as orthotic braces."

1

(Crim. Doc. # 9 at 19). The conspirators "submitted claims to Medicare totaling approximately $15,126,493.91, and that resulted in payments to the conspirators of approximately $6,799,581.52." (Id.).

During the change of plea hearing, Magistrate Judge Thomas G. Wilson went over the plea agreement and other matters with Mr. Camus, who was under oath. (Crim. Doc. # 216). Mr. Camus swore that he understood the elements of the offense, agreed with the factual basis of the plea agreement, had reviewed and discussed the charge and plea agreement with his counsel, that he was satisfied with his counsel's representation, and was pleading guilty knowingly and voluntarily. (Id.).

Thereafter, a presentence investigation report (PSR) was prepared. (Crim. Doc. # 162). In calculating Mr. Camus's guidelines range, the PSR stated that a three-level enhancement under U.S.S.G. § 2B1.1(b)(7) applied because "the intended loss to Medicare, a government healthcare program, was $15,126,493.91." (Id. at 14); see also U.S.S.G. § 2B1.1(b)(7) (2023) ("If (A) the defendant was convicted of a Federal health care offense involving a Government health care program; and (B) the loss under subsection (b)(1) to the Government health care program was (i) more than $1,000,000,

2

increase by 2 levels; (ii) *more than $7,000,000, increase by 3 levels*; or (iii) more than $20,000,000, increase by 4 levels." (emphasis added)). Neither Mr. Camus nor the United States objected to the guidelines calculation in the PSR. (Id. at 25).

Before sentencing, Mr. Camus's counsel filed a sentencing memorandum on his behalf, requesting a downward variance from the sentencing guidelines range. (Crim. Doc. # 161). As part of this argument, counsel emphasized the effect of using the intended loss amount, rather than the actual loss amount, to calculate Mr. Camus's guidelines range:

> The commentary to U.S.S.G. § 2B1.1 provides that there "may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense." See U.S.S.G. § 2B1.1, Comment 21(C). Mr. Camus submits that the guidelines in this particular case precisely prove this point. . . . [The guidelines enhancements are] assessed based on the total amount of "bills" that were submitted to Medicare, rather than the funds that were actually paid out. As indicated herein, the total bills submitted (which figure is being utilized to calculate "loss") amount to $15,126.493.91. However, the total amount which was paid out by Medicare was substantially less - $6,799.581.52.

(Id. at 17). Because the enhancement based on the intended loss amount was significant, Mr. Camus's counsel argued that "Mr. Camus's guideline range [was] 'overstated,'" which justified a downward variance. (Id.).

At sentencing in March 2024, Mr. Camus's counsel reiterated the request for a downward variance from the guidelines range. Counsel asked the Court in the interest of "equity, to focus on" the actual loss amount rather than the larger intended loss amount. (Crim. Doc. # 219 at 48).

The Court granted a downward variance and sentenced Mr. Camus to 78 months' imprisonment and three years' supervised release. (Crim. Doc. # 173). This sentence was significantly lower than the guidelines range of 97 to 120 months' imprisonment. (Crim. Doc. # 171 at 2). He was ordered to pay $6,799,581.52 in restitution, which is the actual loss to the government. (Crim. Doc. # 173 at 7). Mr. Camus did not appeal.

Subsequently, the United States filed a Rule 35 motion, which the Court granted. (Crim. Doc. ## 205, 212). An amended judgment was entered in August 2025, reducing Mr. Camus's sentence to 51 months' imprisonment. (Crim. Doc. # 213). Again, Mr. Camus did not appeal.

On March 20, 2026, Mr. Camus filed the instant 2255 Motion. (Civ. Doc. # 1; Crim. Doc. # 223). The United States has responded (Civ. Doc. # 5), and Mr. Camus has replied. (Civ. Doc. # 6). The 2255 Motion is ripe for review.

4

## II.   Discussion

Mr. Camus raises three claims: two claims asserting the guidelines were calculated based on an incorrect loss amount and one claim of ineffective assistance of counsel, faulting counsel for not objecting to the allegedly incorrect loss amount. (Civ. Doc. ## 1 & 1-1).

Mr. Camus bears the burden of proof and persuasion on every aspect of his claims. Beeman v. United States, 871 F.3d 1215, 1223-24 (11th Cir. 2017); Rivers v. United States, 777 F.3d 1304, 1316 (11th Cir. 2015).

### A.    Grounds Two and Three

Grounds Two and Three of the 2255 Motion argue that the PSR incorrectly asserted the loss amount was over $15 million, when the actual loss amount was under $7 million. (Civ. Doc. # 1-1 at 8-9). Mr. Camus argues the enhancement for the loss amount exceeding $7 million was incorrectly applied and was based on "a threshold factual assertion that was inaccurate or unsupported on the available record." (Id. at 8).

These claims fail on the merits. Mr. Camus is incorrect. His guidelines range was properly calculated. The Court properly applied the three-level enhancement for a loss exceeding $7 million under U.S.S.G. § 2B1.1(b)(7) (2023).

5

As relevant here, U.S.S.G. § 2B1.1(b)(7) provides: "If (A) the defendant was convicted of a Federal health care offense involving a Government health care program; and (B) the loss under subsection (b)(1) to the Government health care program was (i) more than $1,000,000, increase by 2 levels; (ii) more than $7,000,000, increase by 3 levels; or (iii) more than $20,000,000, increase by 4 levels." Id. Mr. Camus received a three-level enhancement for a loss of more than $7 million.

Importantly, the version of § 2B1.1 in effect at the time of the original sentencing stated in its Application Note (3)(A) that "loss" under the guideline "is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 (2023), Application Note 3(A).[1] The Application Note (3)(F)(viii)

---

1 "On November 1, 2024, the Sentencing Commission adopted Amendment 827 to U.S.S.G. § 2B1.1(b)(1), moving Application Note (3)(A), which states that 'loss' under the guideline 'is the greater of actual loss or intended loss,' from the Commentary to the main text." United States v. Martinez, No. 24-10533, 2026 WL 184361, at *5 (11th Cir. Jan. 23, 2026) (citing U.S.S.G. App. C, Amend. 827 (2024)). The Eleventh Circuit has held that Amendment 827 applies to cases pending on direct appeal because it "is a clarifying amendment." United States v. Horn, 129 F.4th 1275, 1300 (11th Cir. 2025). The Eleventh Circuit reasoned that the Amendment simply "maintains the same longstanding approach for calculating loss used in this Circuit's case precedent." Id. at 1301. "[T]he Guidelines already unambiguously say that loss is the greater of actual or intended loss, and Amendment 827, a

states: "In a case in which the defendant is convicted of a Federal health care offense involving a Government health care program, *the aggregate dollar amount of fraudulent bills submitted to the Government health care program shall constitute prima facie evidence of the amount of the intended loss*, i.e., is evidence sufficient to establish the amount of the intended loss, if not rebutted." Id., Application Note (3)(F)(viii) (emphasis added). Here, as Mr. Camus acknowledged in his plea agreement, the conspirators submitted "claims to Medicare totaling approximately $15,126,493.91," which renders this amount the intended loss. (Crim. Doc. # 9 at 19). Mr. Camus has not presented any evidence that could rebut that the intended loss was over $15 million.

Therefore, the loss in this case was $15,126,493.91. (Id.). This loss far exceeds the $7 million triggering the three-level enhancement under U.S.S.G. § 2B1.1(b)(7). The Court properly applied the enhancement. The 2255 Motion is denied as to these claims.

---

clarifying amendment [ ], makes that conclusion even clearer." Id.

7

**B.**   **Ground One**

Finally, Ground One is an ineffective-assistance-of-counsel claim that is intertwined with Mr. Camus's arguments regarding the calculation of the loss amount. (Civ. Doc. # 1-1 at 6-8). He contends that counsel's "performance was deficient because counsel failed to object to the PSR's application of a 3-level enhancement under U.S.S.G. § 2B1.1(b)(7)." (Id. at 7). According to him, that "enhancement applies only when the loss to a government health care program exceeds $7,000,000" but "the record presently available to [Mr. Camus] reflected an actual loss and restitution amount of $6,799,581.52, which does not exceed that threshold." (Id.).

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish deficient performance, Mr. Camus must demonstrate by a preponderance of the evidence "that particular and identified acts or omissions of counsel 'were outside the wide range of professionally competent assistance.'" Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (citations omitted). In other words, Mr.

Camus must show that "no competent counsel would have taken the action that his counsel did take." Id. at 1315. In deciding whether an attorney's performance was deficient, courts are "highly deferential" and "indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal quotation marks omitted).

To satisfy Strickland's second prong — prejudice — Mr. Camus must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "[I]f a claim fails to satisfy the prejudice component, the Court need not make a ruling on the performance component." Ortiz v. United States, No 8:15-cr-409-VMC-JSS, 2017 WL 6021645, at *2 (M.D. Fla. Jan. 11, 2017).

Here, Mr. Camus does not argue that his counsel was ineffective regarding the decision to plead guilty.[2] Rather,

---

[2] To the extent the Motion could be liberally construed as asserting an ineffective assistance of counsel claim regarding the decision to plead guilty, such a claim would

Mr. Camus complains about counsel's performance at sentencing. This claim fails.

Counsel was not ineffective for not objecting to the loss calculation in the PSR. As explained previously, the loss calculation of $15,126,493.91 was correct because this intended loss amount was greater than the actual loss amount. See U.S.S.G. § 2B1.1 (2023), Application Note 3(A) (stating that "loss" under the guideline "is the greater of actual loss or intended loss"). While the actual loss here was less than $7 million, the intended loss exceeded $15 million because the conspirators submitted more than $15 million in claims to Medicare. (Crim. Doc. # 162 at 14; Crim. Doc. # 9 at 19); see also U.S.S.G. § 2B1.1 (2023), Application Note (3)(F)(viii) ("In a case in which the defendant is convicted of a Federal health care offense involving a Government health

---

fail on the merits. Mr. Camus has not met the heavy burden of showing that his sworn statements during his plea colloquy were false. See Winthrop-Redin v. United States, 767 F.3d 1210, 1217 (11th Cir. 2014) ("[B]ecause Winthrop-Redin made statements under oath at a plea colloquy, 'he bears a heavy burden to show his statements were false.'" (citation omitted)). Mr. Camus's sworn statements establish that he agreed with the factual basis of the plea, and he knowingly and voluntarily entered the guilty plea after having ample time to discuss the case and plea agreement with his counsel and without any threats or additional promises being made. (Crim. Doc. # 216).

care program, the aggregate dollar amount of fraudulent bills submitted to the Government health care program shall constitute prima facie evidence of the amount of the intended loss, i.e., is evidence sufficient to establish the amount of the intended loss, if not rebutted.").

Because an objection to the loss calculation would have been meritless, counsel was not ineffective for failing to raise such objection. See Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit."). And the failure to raise this meritless objection did not prejudice Mr. Camus. See United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client.").

Furthermore, the Court notes that counsel effectively represented Mr. Camus's interests at sentencing. Although he did not object to the loss calculation, counsel raised the issue of actual versus intended loss as a justification for a downward variance. In Mr. Camus's sentencing memo, counsel argued that the guidelines range substantially overstated the seriousness of Mr. Camus's offense because of the use of intended — rather than actual — loss in calculating the guidelines. (Crim. Doc. # 161 at 17). Counsel reiterated this

argument at sentencing. (Crim. Doc. # 219 at 48). As a result of this zealous advocacy, the Court granted Mr. Camus a downward variance and sentenced him to 78 months' imprisonment. (Crim. Doc. # 173).

The 2255 Motion is denied as to this claim.

### III. **Evidentiary Hearing**

As the Court readily determined that Mr. Camus's Motion lacks merit, no evidentiary hearing is required. See 28 U.S.C. § 2255(b) (stating that an evidentiary hearing is not necessary if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"); see also Hernandez v. United States, 778 F.3d 1230, 1232-33 (11th Cir. 2015) ("To establish that he is entitled to an evidentiary hearing, Hernandez had to allege facts that would prove that his counsel performed deficiently and that he was prejudiced by his counsel's deficient performance.").

### IV. **Certificate of Appealability and Leave to Appeal In Forma Pauperis Denied**

The Court declines to issue a certificate of appealability because Mr. Camus has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Nor will the Court authorize Mr. Camus to proceed on appeal in forma pauperis

because such an appeal would not be taken in good faith. <u>See</u> 28 U.S.C. § 1915(a)(3). He shall be required to pay the full amount of the appellate filing fee pursuant to Section 1915(b)(1) and (2).

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Pablo Garces Camus's pro se 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence. (Civ. Doc. # 1; Crim. Doc. # 223) is **DENIED.**

(2)  The Clerk is directed to enter judgment accordingly and close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>13th</u> day of May, 2026.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE